(Slip Opinion)                OCTOBER TERM, 2010                1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LOS ANGELES COUNTY, CALIFORNIA *v.* HUMPHRIES ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 09–350.   Argued October 5, 2010—Decided November 30, 2010

The Humphries (hereinafter respondents) were accused of child abuse in California, but were later exonerated. However, under California law, their names were added to a Child Abuse Central Index (Index), where they would remain available to various state agencies for at least 10 years. The statute has no procedures for allowing individuals to challenge their inclusion in the Index, and neither California nor Los Angeles County has created such procedures. Respondents filed suit under §1983, seeking damages, an injunction, and a declaration that public officials and petitioner Los Angeles County had deprived them of their constitutional rights by failing to create a mechanism through which they could contest inclusion in the Index. The District Court granted the defendants summary judgment, but the Ninth Circuit disagreed, holding that the Fourteenth Amendment required the State to provide those on the list with notice and a hearing, and thus respondents were entitled to declaratory relief. The court also held that respondents were prevailing parties entitled to attorney's fees, including $60,000 from the county. The county objected, claiming that as a municipal entity, it was liable only if its "policy or custom" caused the deprivation of a plaintiff's federal right, *Monell* v. *New York City Dept. of Social Servs.*, 436 U. S. 658*,* 694; but a *state* policy caused any deprivation here. The Ninth Circuit, *inter alia,* found that respondents did prevail against the county on their claim for declaratory relief because *Monell* did not apply to prospective relief claims.

*Held: Monell'*s "policy or custom" requirement applies in §1983 cases irrespective of whether the relief sought is monetary or prospective. Pp. 4–10.

Syllabus

(a) In *Monroe* v. *Pape,* 365 U. S. 167*,* this Court based its holding that municipal entities were not "person[s]" under §1983 on the provision's legislative history, particularly Congress' rejection of the so-called Sherman amendment, which would have made municipalities liable for damages done by *private* persons " 'riotously and tumultuously assembled,' " *id.,* at 188–190, and n. 38. Reexamining this legislative history in *Monell*, the Court overruled *Monroe.* It concluded that Congress had rejected the Sherman amendment, not because it would have imposed liability on municipalities, but because it would have imposed such liability solely based on the acts of others. The Court, on the basis of the statutory text and the legislative history, went on to explain what acts are the municipality's own for purposes of liability. The Court held that "a municipality cannot be held liable" solely for the acts of others, *e.g.,* "solely because it employs a tortfeasor," 436 U. S., at 691, but it may be held liable "when execution of a government's policy or custom . . . inflicts the injury," *id.*, at 694. Pp. 4–7.

(b) Section 1983, read in light of *Monell*'s understanding of the legislative history, explains why claims for prospective relief, like claims for money damages, fall within the scope of the "policy or custom" requirement. Nothing in §1983 suggests that the causation requirement should change with the form of relief sought. In fact, the text suggests the opposite when it provides that a person who meets §1983's elements "shall be liable . . . in an action at law, suit in equity, or other proper proceeding for redress." Thus, as *Monell* explicitly stated, "local governing bodies . . . can be sued directly under §1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes" a policy or custom. 436 U. S., at 690. To find the "policy or custom" requirement inapplicable in prospective relief cases would also undermine *Monell*'s logic. For whether an action or omission is a municipality's "own" has to do with the nature of the action or omission, not with the nature of the relief that is later sought in court. Pp. 7–8.

(c) Respondents' arguments to the contrary are unconvincing. Pp. 8–9.

Reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which all other Members joined, except KAGAN, J., who took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–350

LOS ANGELES COUNTY, CALIFORNIA, PETITIONER
*v.* CRAIG ARTHUR HUMPHRIES ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[November 30, 2010]

JUSTICE BREYER delivered the opinion of the Court.

In *Monell* v. *New York City Dept. of Social Servs.,* 436 U. S. 658 (1978), this Court held that civil rights plaintiffs suing a municipal entity under 42 U. S. C. §1983 must show that their injury was caused by a municipal policy or custom. The case before the Court in *Monell* directly involved monetary damages. The question presented is whether the "policy or custom" requirement also applies when plaintiffs seek prospective relief, such as an injunction or a declaratory judgment. We conclude that it does so apply.

I

The case arises out of the following circumstances: The California Child Abuse and Neglect Reporting Act, Cal. Penal Code Ann. §11164 *et seq.* (West Rev. Supp. 2010), requires law enforcement and other state agencies to investigate allegations of child abuse. These agencies must report to the California Department of Justice all instances of reported child abuse the agency finds "not unfounded," even if they are "inconclusive or unsubstantiated." §§11169(a), 11170(a)(3). The statute requires the

department to include all these reports in a Child Abuse Central Index (Index), where they remain available to various state agencies for at least 10 years. §11170(a). The statute also says that if

> "a report has previously been filed which subsequently proves to be unfounded, the Department of Justice shall be notified in writing of that fact and shall not retain the report." §11169(a).

The statute, however, does not set forth procedures for reviewing whether a previously filed report is unfounded, or for allowing individuals to challenge their inclusion in the Index. Nor, up until the time of this lawsuit, had California or Los Angeles County created any such procedures. But cf. §11170(a)(2) ("The submitting agencies are responsible for the accuracy, completeness, and retention of the reports described in this section").

The two plaintiffs in this case were initially accused of child abuse. But they were later exonerated. They sought to have their names removed from the Index. Unable to convince the Los Angeles Sheriff's Department to remove them, they filed this §1983 case against the attorney general of California, the Los Angeles County sheriff, two detectives in the sheriff's department, and the County of Los Angeles. They sought damages, an injunction, and a declaration that the defendants had deprived them of their constitutional rights by failing to create a procedural mechanism through which one could contest inclusion on the Index. See U. S. Const., Amdt. 14; Rev. Stat. §1979, 42 U. S. C. §1983. The District Court for the Central District of California granted summary judgment to all of the defendants on the ground that California had not deprived plaintiffs of a constitutionally protected "liberty" interest. But on appeal the Ninth Circuit disagreed.

The Ninth Circuit held that the Fourteenth Amendment required the State to provide those included on the list

notice and "'some kind of hearing.'" 554 F. 3d 1170, 1201 (2009). Thus the Circuit held that the plaintiffs were entitled to declaratory relief, and it believed that (on remand) they might prove damages as well. *Ibid.*

The Ninth Circuit also held that the plaintiffs were prevailing parties, thereby entitled to approximately $600,000 in attorney's fees. 42 U. S. C. §1988(b) (providing for payment of attorney's fees to parties prevailing on §1983 claims). See No. 05–56467 (June 22, 2009), App. to Pet. for Cert. 1–4 (hereinafter First Fee Order); No. 05–56467 (Dec. 2, 2009), App. to Reply to Brief in Opposition 1–2 (hereinafter Second Fee Order). The Ninth Circuit wrote that Los Angeles County must pay approximately $60,000 of this amount. First Fee Order 3; Second Fee Order 2.

Los Angeles County denied that it was liable and therefore that it could be held responsible for attorney's fees. It argued that, in respect to the county, the plaintiffs were not prevailing parties. That is because the county is a municipal entity. Under *Monell's* holding a municipal entity is liable under §1983 only if a municipal "*policy or custom*" caused a plaintiff to be deprived of a federal right. 436 U. S., at 694 (emphasis added). And it was *state* policy, not *county* policy, that brought about any deprivation here.

The Ninth Circuit responded to this argument as follows: First, it said that county policy *might* be responsible for the deprivation. It "is possible," the Ninth Circuit said, that the county, "[b]y failing to" "creat[e] an independent procedure that would allow" the plaintiffs "to challenge their listing[,] . . . adopted a custom and policy that violated" the plaintiffs' "constitutional rights." 554 F. 3d, at 1202. Second, it said that "because this issue is not clear based on the record before us on appeal . . . we remand to the district court to determine the County's liability under *Monell." Ibid.* Third, it saw no reason to remand in re-

spect to the county's obligation to pay $60,000 in attorney's fees. That, it wrote, is because *"in our circuit . . . the limitations to liability established in* Monell *do not apply to claims for prospective relief,"* such as the declaratory judgment that the Circuit had ordered entered. First Fee Order 3–4 (citing *Chaloux* v. *Killeen*, 886 F. 2d 247, 250 (CA9 1989); *Truth* v. *Kent School Dist.*, 542 F. 3d 634, 644 (CA9 2008); emphasis added).

The county then asked us to review this last-mentioned Ninth Circuit holding, namely, the holding that *Monell*'s "policy or custom" requirement applies only to claims for damages but not to claims for prospective relief. Because the Courts of Appeals are divided on this question, we granted the county's petition for certiorari. Compare *Reynolds* v. *Giuliani*, 506 F. 3d 183, 191 (CA2 2007) (holding that *Monell*'s "policy or custom" requirement applies to claims for prospective relief as well as claims for damages); *Dirrane* v. *Brookline Police Dept.*, 315 F. 3d 65, 71 (CA1 2002) (same); *Greensboro Professional Fire Fighters Assn., Local 3157* v. *Greensboro*, 64 F. 3d 962, 967, n. 6 (CA4 1995) (applying the *Monell* requirement to a prospective relief claim); *Church* v. *Huntsville*, 30 F. 3d 1332, 1347 (CA11 1994) (same), with *Chaloux*, *supra*, at 251 (holding that *Monell* does not apply to prospective relief claims). See also *Gernetzke* v. *Kenosha Unified School Dist. No. 1*, 274 F. 3d 464, 468 (CA7 2001) (reserving the question but noting the "predominant" view that "*Monell*'s holding applies regardless of the nature of the relief sought").

We conclude that *Monell*'s holding applies to §1983 claims against municipalities for prospective relief as well as to claims for damages.

II

A

We begin with §1983 itself, which provides:

"Every *person* who, under color of any [state] stat-
ute, ordinance, regulation, custom, or usage . . . sub-
jects, or causes to be subjected, any . . . other per-
son . . . to the deprivation of any rights . . . secured by
the Constitution and laws [of the United States], shall
be liable to the party injured in an action at law, suit
in equity, or other proper proceeding for redress."
(Emphasis added.)

In 1961, in *Monroe* v. *Pape,* 365 U. S. 167*,* this Court held
that municipal entities were not "person[s]" under §1983.
The Court based this conclusion on the history of the Civil
Rights Act of 1871's enactment.  It noted that Congress
rejected an amendment (called the Sherman amendment)
that would have made municipalities liable for damage
done by *private* persons "'riotously and tumultuously
assembled.'"  *Id.,* at 188–190, and n. 38 (quoting Cong.
Globe, 42d Cong., 1st Sess., 663 (1871)).  This rejection,
the Court thought, reflected a determination by the 1871
House of Representatives that "'Congress had no constitu-
tional power to impose *any obligation* upon county and
town organizations, the mere instrumentality for the
administration of state law.'"  365 U. S., at 190 (quoting
Cong. Globe, *supra,* at 804 (statement of Rep. Poland);
emphasis added).  The Court concluded that Congress
must have doubted its "constitutional power . . . to impose
civil liability on municipalities."  365 U. S., at 190.  And
for that reason, Congress must have intended to exclude
municipal corporations as §1983 defendants.  The statute's
key term "person" therefore did not cover municipal enti-
ties. *Id.*, at 191.

Sixteen years later, in *Monell*, the Court reconsidered
the question of municipal liability.  After reexamining the
1871 legislative history in detail, the Court concluded that
Congress had rejected the Sherman amendment, not
because it would have imposed liability upon municipali-

ties, but because it would have imposed liability upon municipalities based purely upon the *acts of others.* That is to say, the rejected amendment would have imposed liability upon local governments "without regard to whether a local government *was in any way at fault* for the breach of the peace for which it was to be held for damages." 436 U. S., at 681, n. 40 (emphasis added). In *Monell*'s view Congress may have thought that it lacked the power to impose that kind of indirect liability upon municipalities, *id.*, at 679, but "nothing said in debate on the Sherman amendment would have prevented holding a municipality liable . . . for *its own* violations of the Fourteenth Amendment," *id.*, at 683 (emphasis added). The Court, overruling *Monroe,* held that municipalities were "persons" under §1983. 436 U. S., at 690.

The Court also concluded that a municipality could not be held liable under §1983 solely because it employed a tortfeasor. The Court's conclusion rested on "the language of §1983, read against the background of the same legislative history." *Id.*, at 691. Section 1983's causation language imposes liability on a "'person who . . . shall subject, or cause to be subjected, any person'" to a deprivation of federal rights. *Ibid.* (quoting 17 Stat. 13; emphasis deleted). That language, the Court observed, could not "be easily read to impose liability vicariously . . . solely on the basis of the existence of an employer-employee relationship with a tortfeasor." 436 U. S., at 692. The statute's legislative history, in particular the constitutional objections that had been raised to the Sherman amendment, supported this conclusion. *Id.*, at 692–94, and n. 57.

For these reasons, the Court concluded that a municipality could be held liable under §1983 only for its own violations of federal law. *Id.*, at 694. The Court described what made a violation a municipality's *own* violation:

   "Local governing bodies, therefore, can be sued di-

rectly under §1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. . . . [They can also be sued for] deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.,* at 690–691 (footnote omitted).

The Court has also included the terms "usage" and "practice" as customs for which liability is appropriate. See *ibid.* The length of this list of types of municipal action leads us here to use a shorthand term "policy or custom," but when we do so, we mean to refer to the entire list. See *id.*, at 694 (using the shorthand "policy or custom"); see also, *e.g., Fitzgerald* v. *Barnstable School Comm.*, 555 U. S. 246, \_\_\_ (2009) (slip op., at 10) (using the phrase "custom, policy, or practice," to describe municipal liability under §1983).

In sum, in *Monell* the Court held that "a municipality cannot be held liable" solely for the acts of others, *e.g.*, "*solely* because it employs a tortfeasor." 436 U. S., at 691. But the municipality may be held liable "when execution of a government's *policy or custom* . . . inflicts the injury." *Id.*, at 694 (emphasis added).

B

The language of §1983 read in light of *Monell*'s understanding of the legislative history explains why claims for prospective relief, like claims for money damages, fall within the scope of the "policy or custom" requirement. Nothing in the text of §1983 suggests that the causation requirement contained in the statute should change with the form of relief sought. In fact, the text suggests the opposite when it provides that a person who meets §1983's

elements "shall be liable . . . in an action at law, suit in equity, or other proper proceeding for redress." Thus, as *Monell* explicitly stated, "[l]ocal governing bodies . . . can be sued directly under §1983 for monetary, *declaratory, or injunctive relief* where, as here, the action that is alleged to be unconstitutional implements or executes" a policy or custom. 436 U. S., at 690 (emphasis added). *Monell* went on to quote this Court's statement in a 1973 case, *Kenosha* v. *Bruno*, 412 U. S. 507, 513, to the effect that the Congress that enacted §1983 did not intend the "'generic word "person" . . . *to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them*.'" 436 U. S., at 701, n. 66 (emphasis added). *Monell* added that "[n]othing we say today affects" this pre-*Monell* "conclusion." *Ibid.*

   *Monell*'s logic also argues against any such relief-based bifurcation. The *Monell* Court thought that Congress intended potential §1983 liability where a municipality's *own* violations were at issue but not where only the violations of *others* were at issue. The "policy or custom" requirement rests upon that distinction and embodies it in law. To find the requirement inapplicable where prospective relief is at issue would undermine *Monell*'s logic. For whether an action or omission is a municipality's "own" has to do with the nature of the action or omission, not with the nature of the relief that is later sought in court.

C

   The Humphries' (hereinafter respondents) arguments to the contrary are unconvincing. Respondents correctly note that by the time *Monell* reached the Supreme Court only the plaintiffs' damages claim remained live. See *id.*, at 661. From this fact they conclude that the Court's holding applies directly only to claims for monetary damages. A holding, however, can extend through its logic beyond the specific facts of the particular case. It does so here.

Respondents add that not only did *Monell* involve a damages claim, but its holding rests upon the concern that municipalities might have to pay large damages awards. The Court so suggests when it points out that municipalities should not be liable for an employee's wrongful acts, simply by applying agency-based principles of *respondeat superior*. But as we have pointed out, the Court's rejection of *respondeat superior* liability primarily rested not on the municipality's economic needs, but on the fact that liability in such a case does not arise out of the municipality's own wrongful conduct.

Respondents further claim that, where prospective relief is at issue, *Monell* is redundant. They say that a court cannot grant prospective relief against a municipality unless the municipality's own conduct has caused the violation. Hence, where such relief is otherwise proper, the *Monell* requirement "shouldn't screen out any case." Tr. of Oral Arg. 48.

To argue that a requirement is necessarily satisfied, however, is not to argue that its satisfaction is unnecessary. If respondents are right, our holding may have limited practical significance. But that possibility does not provide us with a convincing reason to sow confusion by adopting a bifurcated relief-based approach to municipal liability that the Court has previously rejected.

Finally, respondents make the mirror-image argument that applying *Monell*'s requirement to prospective relief claims will leave some set of ongoing constitutional violations beyond redress. Despite the fact that four Circuits apply *Monell*'s requirement to prospective relief, however, respondents have not presented us with any actual or hypothetical example that provides serious cause for concern.

\*          \*          \*

For these reasons, we hold that *Monell*'s "policy or cus-

Opinion of the Court

tom" requirement applies in §1983 cases irrespective of whether the relief sought is monetary or prospective.  The Ninth Circuit's contrary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*


JUSTICE KAGAN took no part in the consideration or decision of this case.