**FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DEC 9 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LARISSA WALN; BRYAN WALN,
            Plaintiffs-Appellants,

   v.

DYSART SCHOOL DISTRICT; DYSART SCHOOL
DISTRICT GOVERNING BOARD; CHRISTINE
PRITCHARD, Board Member; JAY LEONARD,
Board Member; DAWN DENSMORE, Board Member;
TRACI SAWYER-SINKBEIL, Board Member;
JENNIFER TANNER, Board Member; QUINN
KELLIS, Dysart Superintendent; VALLEY VISTA
HIGH SCHOOL; ROBERTA LOCKHART, Valley
Vista High School Principal; BRAD LARREMORE,
Valley Vista High School Assistant Principal; STEVEN
PIERCE, Valley Vista High School Assistant Principal,
            Defendants-Appellees.

No.   21-15737

D.C. No. 2:20-cv-00799-CDB

OPINION

Appeal from the United States District Court
for the District of Arizona
Camille D. Bibles, Magistrate Judge, Presiding

Argued and Submitted July 27, 2022
San Francisco, California

Before:  Susan P. Graber and John B. Owens, Circuit Judges, and M. Miller
       Baker,* International Trade Judge.

Opinion by Judge Graber;
Partial Concurrence and Partial Dissent by Judge Baker

---

    *    The Honorable M. Miller Baker, Judge for the United States Court of
International Trade, sitting by designation.

# SUMMARY[**]

## Civil Rights

The panel reversed the district court's dismissal of a complaint brought pursuant to 42 U.S.C. § 1983 asserting, among other things, that the Dysart School District, located in Phoenix, Arizona, violated plaintiff Larissa Waln's rights to free exercise of religion and free speech by selectively enforcing its policy of prohibiting students from decorating their graduation caps.

Waln—an enrolled member of the Sisseton Wahpeton Oyate, a Native American tribe—asked the District to accommodate her religious practice by allowing her to wear an eagle feather on her cap during high-school graduation. The District declined the request on the ground that the policy permitted no exceptions. Waln arrived at graduation wearing an eagle feather, and District officials prohibited her from attending. But that same day, as alleged in the complaint, the District permitted other students to wear secular messages on their graduation caps.

The panel held that Waln plausibly alleged, at the motion-to-dismiss stage, that the District selectively enforced its policy, in violation of her First Amendment rights. As to the claim brought pursuant to the Free Exercise Clause, Waln alleged sufficient facts to assert that the District enforced its policy to permit the secular and forbid the religious. Altered graduation caps—whether with a secular message or a religious symbol—presented a nearly identical threat to the District's interests in maintaining the sanctity and formality of the graduation ceremony, avoiding disruption, and fostering unity in the graduating class. As alleged, the District's policy was not enforced evenhandedly and, therefore, was not generally applicable. Whether Waln could prove those allegations was a matter for another day.

Waln also carried her burden at this stage to show that the District's selective enforcement of its policy constituted impermissible viewpoint or content discrimination, in violation of the First Amendment's Free Speech Clause. The complaint plausibly alleged a discrepancy in treatment on the basis of viewpoint and

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the District enforced its facially neutral policy in a selective way. The panel rejected the District's argument that the restrictions were necessary in order for the District to comply with the Establishment Clause. The District had not sufficiently met its burden to show that accommodating religious dress for an individual student would have any effect on other students' rights.

Concurring in part and dissenting in part, Judge Baker concurred in the judgment reversing as to Waln's § 1983 claims for violations of her free exercise and free speech rights. Judge Baker respectfully dissented from the majority's conclusion that these claims cleared the pleading standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Nothing in Waln's complaint tended to exclude the possibility that the student with the cap adorned with the secular message simply broke the rules. In Judge Baker's view, the district court correctly determined that Waln's complaint did not adequately allege plausible claims for relief under the Free Exercise or Free Speech Clauses based on selective enforcement. The district court erred, however, in declining to grant her leave to amend to correct these deficiencies.

## COUNSEL

Matthew L. Campbell (argued) and David Gover, Native American Rights Fund, Boulder, Colorado; Reed C. Bienvenu, Rothstein Donatelli LLP, Santa Fe, New Mexico; Carolyn M. Nichols and Alicia C. Lopez, Rothstein Donatelli LLP, Albuquerque, New Mexico; April E. Olson and Glennas'ba Augborne Arents, Rothstein Donatelli LLP, Tempe, Arizona; for Plaintiffs-Appellants.

Charles W. Wirken (argued), Robert D. Haws, and Brittany Reed, Gust Rosenfeld PLC, Phoenix, Arizona, for Defendants-Appellees.

GRABER, Circuit Judge:

The Dysart School District, located in Phoenix, Arizona, has a graduation policy that prohibits students from decorating their graduation caps. Plaintiff Larissa Waln[1]—an enrolled member of the Sisseton Wahpeton Oyate, a Native American tribe—asked the District to accommodate her religious practice by allowing her to wear an eagle feather on her cap during high-school graduation. The District declined Plaintiff's request on the ground that the policy permits no exceptions. Plaintiff arrived at graduation wearing an eagle feather, and District officials prohibited her from attending. But that same day, the District permitted other students to wear secular messages on their graduation caps.

Plaintiff brought the present action alleging those facts and asserting, among other things, that the selective enforcement of the policy violated her rights to the free exercise of religion and to free speech. The district court concluded that Plaintiff did not allege a plausible claim and dismissed the action with prejudice under Federal Rule of Civil Procedure 12(b)(6). Reviewing de novo the sufficiency of the complaint, Santa Monica Nativity Scenes Comm. v. City of Santa Monica, 784 F.3d 1286, 1291 (9th Cir. 2015), we disagree. Plaintiff plausibly has alleged that the District selectively enforced its policy in violation of

---

[1] Larissa's father, Bryan Waln, also is a Plaintiff. For the sake of clarity, when we refer to "Plaintiff" in the singular, we mean Larissa Waln.

her First Amendment rights.  We therefore reverse and remand for further proceedings.

## BACKGROUND

We recount the facts as set out in the operative complaint and must accept as true all well-pleaded allegations, construed in the light most favorable to Plaintiff. Padilla v. Yoo, 678 F.3d 748, 751 n.1 (9th Cir. 2012).

Plaintiff long has participated in traditional and cultural practices of her Native American heritage and often participates in Native American religious ceremonies.  An important part of her religious beliefs is the sacred nature of eagle feathers.  In her religion, eagles have a special connection with God, and their feathers are considered sacred objects.  Plaintiff's "eagle plume was blessed in a religious ceremony."  Eagle feathers may not be covered or worn underneath a cap, which would be considered desecration or disrespect.  And, by custom, they are worn "in times of great honor," such as during a graduation ceremony.  First Am. Compl. at 11.

The religious practice of wearing an eagle feather at a graduation has a particular history.  In the 1870s, the federal government began removing Native American children from their parents and their homes and sending them to boarding schools.  Those schools sought to assimilate Native Americans into western society, that is, to "kill the Indian . . . and save the man."  First Am.

Compl. at 5 (quoting Zoey Serebriany, <u>Right to Regalia: Let Those Feathers Fly at</u> <u>Graduation</u>, Lakota People's Law Project (June 3, 2019), https://www.lakotalaw.org/news/2019-06-03/right-to-regalia).  "Native American children in boarding schools were forced to . . . get rid of their traditional regalia, and were punished for speaking their own language."  First Am. Compl. at 5.  These schools practiced forced assimilation techniques, including denying food to boys with long hair, forcing pupils "to disavow their religious beliefs," and teaching students that Native American religious and cultural practices were wrong.  Serebriany, <u>supra</u>.  Many children died.  <u>Id.</u>  As a result of that history, "[f]or some Native students, wearing an eagle feather may be just as important as receiving the actual diploma."  <u>Id.</u>  Wearing these items allows Native students to honor their religious beliefs, pay respect to their ancestors, and recognize "the strength it took to reach this milestone" as individuals and as members of their tribal communities.  <u>See</u> <u>id.</u>

In line with this religious practice, Plaintiff's grandmother gave Plaintiff an eagle plume to wear at her high school graduation.  The plume had been blessed in a religious ceremony in South Dakota.  Plaintiff added the plume, among other

4

culturally significant items, to her graduation cap.[2]  Fully adorned, the cap looked like this:



First Am. Compl. at 12.  Plaintiff "wanted to observe her religion and culture by wearing her beaded cap and sacred eagle plume during her high school graduation ceremony.  This ritual held the same significance to the Waln family as other religions['] transition ceremonies, such as a bar or bat mitzvah or confirmation."  First Am. Compl. at 11.

Plaintiff then learned of the District's dress-code policy for graduation.[3]  Among other restrictions, the policy declares:  "Students may NOT decorate their gown or cap."  Although some non-cap adornments are permitted ("school

---

[2]  Plaintiff also added a medicine wheel and beads.  "On the Rosebud Sioux Reservation (the home of [Plaintiff's father's] tribe), it is tradition for all high school graduates to bead caps or wear beaded caps."  First Am. Compl. at 9.

[3]  The District's lawyer wrote that "[t]he District has imposed a reasonable restriction on student speech through its commencement dress code."  First Am. Compl. at 18.  Additionally, the District's superintendent is alleged to have been the final decision-maker.  Accordingly, the policy is alleged to apply District-wide.  Counsel so confirmed at oral argument.

medallion and school approved honor cords and stoles may be worn over gown"), the policy makes clear that "no other adornment/additions are allowed."

Plaintiff's father sought a religious accommodation for his daughter. He spoke to several school administrators and to the District's superintendent. They denied his request. Plaintiff's religious leader became involved. The District stuck to its policy.

On May 16, 2019, Plaintiff went to her graduation in Glendale, Arizona, wearing her decorated cap. School officials did not let her inside the venue. But that same day, at that same venue, other high school students from the District were permitted to participate in their graduation ceremony wearing caps that violated the dress-code policy. For example, one student was photographed wearing a "breast cancer awareness" sticker on his cap:



First Am. Compl. at 21–22. And, as alleged in the complaint, he was not alone: "[O]ther students in the Dysart School District had adorned graduation caps or

6

wore prohibited items on their person during their graduation ceremonies." First Am. Compl. at 23.

Plaintiff brought this action against the District, among other defendants, seeking damages for three claims under 42 U.S.C. § 1983: (1) a violation of the Free Exercise Clause; (2) a violation of the Free Speech Clause; and (3) a violation of the Equal Protection Clause.[4] Defendants moved to dismiss the action under Rule 12(b)(6). The district court granted the motion and entered a final judgment in favor of all defendants. Plaintiff timely appealed.

On appeal, Plaintiff abandoned her federal claims against all defendants except for the District. Plaintiff also abandoned her equal protection claim. Thus, her sole challenge remains that she has adequately alleged free exercise and free speech claims against the District.

## DISCUSSION

Plaintiff asserts that the District's conduct violated both the Free Exercise and Free Speech Clauses of the First Amendment. "These Clauses work in tandem. Where the Free Exercise Clause protects religious exercises . . . the Free Speech Clause provides overlapping protection for expressive religious activities."

---

[4] Plaintiff, along with her father, also brought two state-law claims under Arizona law. The district court declined to exercise supplemental jurisdiction over those claims, and the sufficiency of those claims is not before us.

Kennedy v. Bremerton Sch. Dist., 142 S. Ct. 2407, 2421 (2022). Thus, the First Amendment "doubly protects religious speech." Id.

"[A] plaintiff bears certain burdens to demonstrate an infringement of [her] rights under the Free Exercise and Free Speech Clauses." Id. "If the plaintiff carries these burdens, the focus then shifts to the defendant to show that its actions were nonetheless justified and tailored consistent with the demands of our case law." Id. Because the complaint adequately alleges that the District enforced its policy selectively, we conclude that Plaintiff carried her burden to assert both claims.

A. Free Exercise

Plaintiff claims that the District "prohibit[ed] the free exercise" of her "religio[us]" faith. U.S. Const. amend. I. Under this guarantee, a plaintiff must "show[] that a government entity has burdened [her] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" Kennedy, 142 S. Ct. at 2422 (citation omitted). General applicability requires, among other things, that the laws be enforced evenhandedly. Id. at 2423; see also Apache Stronghold v. United States, 38 F.4th 742, 770 (9th Cir. 2022) ("[A] law is not 'generally applicable' if the law 'impose[s] burdens only on conduct motivated by religious belief' in a 'selective manner.'" (second brackets in original) (quoting

8

Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533, 543 (1993))); Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1079 (9th Cir. 2015) (same).

Here, the complaint avers that "other students were permitted to adorn their graduation caps" in violation of the policy, but Plaintiff was not. And the complaint points to one student in particular who attended a high school graduation in the District—on the same day and at the same venue—sporting a "breast cancer awareness" sticker on his graduation cap, in apparent violation of the policy. If the District did not enforce the policy to exclude a student's secular message then, in the absence of an appropriate justification, the District cannot enforce its policy to burden Plaintiff's religious conduct.

The District argues that Plaintiff and the student in the photograph are not comparable. The two students attended different high schools within the District and different graduation ceremonies. For that reason, the District asserts, different school officials made decisions regarding enforcement of the District's policy for each student. Thus, according to the District, the students' activities—attending graduation and adorning their caps—present different circumstances in a material way.

But that argument misses the mark. "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." Tandon v.

9

Newsom, 141 S. Ct. 1294, 1296 (2021) (per curiam). Here, the critical point is that, as alleged in the complaint, the District permitted secular conduct that contravened the legitimate government interests underlying the policy to the same degree that Plaintiff's attire would have done.

The District lists several interests that motivate its policy: maintaining the sanctity and formality of the graduation ceremony, avoiding disruption, and fostering unity in the graduating class. But altered graduation caps—whether with a secular message or a religious symbol—present a nearly identical threat to those interests. Plaintiff alleged sufficient facts to assert that the District enforced its policy to permit the secular and forbid the religious. Thus, it does not matter which high school within the District hosted the ceremony or which school officials enforced the policy. As alleged, the District's policy was not enforced evenhandedly and, therefore, was not generally applicable.

The District further argues that the photograph depicting one example of a non-conforming graduation cap displaying a secular message is not comparable to Plaintiff's religious adornment because, the District alleges, the photograph was not taken during the graduation ceremony. But a "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is im plausible [sic]." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). It is at least as plausible that the student in question wore the

10

cap decorated with a secular sticker at the graduation ceremony itself, as the complaint alleges directly. Moreover, the complaint alleges that the graduation cap in the photograph is simply one example among other secularly decorated caps. Therefore, the complaint meets its burden to show that the District's policy was selectively enforced and, accordingly, not generally applicable. See id. ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).").[5]

The dissent challenges the sufficiency of the allegations in Plaintiff's first amended complaint, reasoning that the complaint does not permit the inference that the District enforced its policy selectively. With respect, the dissent mischaracterizes the allegations in the first amended complaint. Paragraph 5 states:

> Mere hours [after refusing to allow Plaintiff Larissa Waln to participate in the commencement ceremony wearing her beaded graduation cap and sacred eagle plume], the School District permitted another student to wear a cancer awareness sticker on his graduation cap, in full view of District employees. That student was permitted entry to his graduation ceremony in the same building just a few hours after Larissa was turned away.

Similarly, paragraphs 83 through 85 of the operative complaint allege:

---

[5] We need not and do not address Plaintiff's other theories challenging the neutrality and general applicability of the District's policy.

11

83. That same day [of Larissa's graduation], May 16, 2019, <u>another student in the School District was</u> not denied entry, but rather <u>permitted to wear what appears to be a breast cancer awareness sticker on his graduation cap at the Shadow Ridge High School graduation</u>, which was also held at State Farm Stadium after the Valley Vista High School graduation.

84. Shadow Ridge High School is likewise part of the Dysart School District.

85. Despite the District's pronouncement that no student would be permitted to participate in any graduation ceremony with an adorned cap, this student participated with an adorned cap in full view of District and school faculty.

The dissent's speculation that the student in question merely disobeyed the rules, without having received permission to wear the adorned cap, Dissent at 5–6, is improper when we are reviewing dismissal of a complaint, the allegations of which we must accept as true. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

Nor is it relevant that the photograph incorporated in Paragraph 86 appears to have been taken after the graduation ceremony. The complaint includes it <u>only</u> to show the <u>nature</u> of the altered graduation cap that the student allegedly had worn, with permission, at his graduation ceremony: "Here is a photo of the Shadow Ridge High School student's adorned cap." The complaint does not, and need not, allege that the illustrative photograph was taken during the ceremony itself; other paragraphs allege that the District allowed the student to wear the adorned cap during his graduation ceremony.

12

Finally, it is permissible for Plaintiff to allege "on information and belief" that additional students in the Dysart School District, other than the one pictured in Paragraph 86, wore adorned graduation caps during their graduation ceremonies. The dissent asserts that, because the graduation ceremonies were open to members of the public, Plaintiff is deemed to be aware of everything that happened at all the ceremonies, so they may not plead on information and belief. Dissent at 4–5. It is true that a fact ascertainable from a public record may not be alleged on information and belief. See Bertucelli v. Carreras, 467 F.2d 214, 215 n.4 (9th Cir. 1972) (per curiam) (noting that the plaintiff could not allege on information and belief that the warrant issued to secure his arrest was not signed by a magistrate). But a plaintiff may plead facts on information and belief "where the belief is based on factual information that makes the inference of culpability plausible." Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)). That standard is met here because Plaintiff bases her belief on the specific factual example detailed above. In addition, it is an overstatement to assert that a plaintiff never may allege something on information and belief that occurs in public, on the ground that the facts are not solely within the defendant's knowledge. Dissent at 4–5. If a large school district held twenty-five simultaneous graduation ceremonies, for example, a plaintiff

13

could not have personal knowledge of what occurred at each one, but the school district would.

Perhaps most important here is that the first amended complaint alleges directly that the District has "permitt[ed] other students to express their activism and secular interests, through permitted or tolerated adornments on their caps," First Am. Compl. at 25, and that "other students in the school district were not prohibited from adorning their caps with stickers explaining other viewpoints (namely, to raise awareness and/or funding for social causes)." First Am. Compl. at 28. Whether Plaintiff can prove those allegations is a matter for another day.

In short, Plaintiff has carried her burden, at the motion-to-dismiss stage, to show that the District's policy is not generally applicable because it was enforced in a selective manner. Thus, there is "a First Amendment violation unless the government can satisfy strict scrutiny," Kennedy, 142 S. Ct. at 2422 (internal quotation marks omitted), which we address below in Part C.

We turn next to whether Plaintiff has carried her burden to assert a claim under the Free Speech Clause.[6]

B. Free Speech

Plaintiff also claims that the District "abridg[ed]" her right to "free[] . . .

---

[6] In the dissent's view, the same pleading defects affect Plaintiff's free speech claim. Dissent at 7. Our response, likewise, is the same.

14

speech." U.S. Const. amend. I. The Free Speech Clause generally prohibits suppressing speech "because of its message," and the Supreme Court has enforced that prohibition in the public-school setting. Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 828–29 (1995). Here, the parties do not dispute that, by wearing an eagle feather at graduation, Plaintiff sought to convey a particular message of academic achievement and resilience. Thus, our task is to determine whether the complaint adequately alleges that the District's policy infringed on that protected speech in the school context.

The First Amendment "rights of students in public school are not automatically coextensive with the rights of adults" in non-school settings. Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986). For public school students, we apply First Amendment rights "in light of the special characteristics of the school environment." Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969). We analyze restrictions on student speech in public schools depending on the category in which the speech falls: "(1) vulgar, lewd, obscene, and plainly offensive speech, (2) school-sponsored speech, and (3) speech that falls into neither of these categories." Jacobs v. Clark Cnty. Sch. Dist., 526 F.3d 419, 429 (9th Cir. 2008) (internal quotation marks and citation omitted). The third category is further divided into policies that discriminate based on viewpoint and policies that are content-neutral but applied in a discriminatory manner. Id. at 432

15

& n.28.

To determine whether a school district infringed a student's free-speech rights, we normally begin with a forum analysis. Nurre v. Whitehead, 580 F.3d 1087, 1093 (9th Cir. 2009); Alpha Delta Chi-Delta Chapter v. Reed, 648 F.3d 790, 797–98 (9th Cir. 2011). But we skip that step if the policy discriminates because of the "viewpoint" of the speaker. See Nurre, 580 F.3d at 1095 n.6 (noting that viewpoint discrimination is "impermissible no matter the forum"); see also Tinker, 393 U.S. at 509 (ruling that viewpoint-based discrimination is impermissible if the government cannot show that the forbidden speech "would materially and substantially interfere" with educational operations (internal quotation marks and citation omitted)). "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Rosenberger, 515 U.S. at 829. Viewpoint-based restrictions on speech are subject to strict scrutiny. See Kennedy, 142 S. Ct. at 2426 (observing that "[a] similar standard" to strict scrutiny "generally obtains under the Free Speech Clause"); cf. Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 171 (2015) (applying strict scrutiny to content-based restrictions on speech).

Here, the District's policy is, on its face, viewpoint neutral. It prohibits all speech from all students on all graduation caps at the ceremony. See Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez, 561

16

U.S. 661, 694–95 (2010) (holding that an "all-comers" policy that requires <u>all</u> student groups to accept <u>all</u> members does not discriminate on the basis of viewpoint). But a policy that is "viewpoint neutral on its face may still be unconstitutional if not applied uniformly." <u>Alpha Delta Chi-Delta Chapter v. Reed</u>, 648 F.3d 790, 803 (9th Cir. 2011).

In <u>Alpha Delta</u>, San Diego State University declined to register several Christian student groups because those groups' membership requirements violated the school's general non-discrimination policy. <u>Id.</u> at 795–96. But the record contained evidence that other student groups had membership requirements that appeared to violate the policy. <u>Id.</u> at 803–04. Thus, although the school's policy was viewpoint neutral on its face, the plaintiffs offered evidence suggesting that it was not applied in a viewpoint neutral manner. <u>Id.</u> at 800–04. We emphasized that, although it was "possible that these groups were approved inadvertently because of administrative oversight, or that these groups have, despite the language in their applications, agreed to abide by the nondiscrimination policy," the record did not adequately explain the as-applied discrepancy. <u>Id.</u> at 804. Accordingly, we reversed the district court's grant of summary judgment and remanded for further proceedings. <u>Id.</u>

Here, the complaint plausibly alleges that the District enforced its facially neutral policy in a selective way. Although Plaintiff was prohibited from

17

expressing her religious message on her graduation cap, "other students in the school district were not prohibited from adorning their caps with stickers expressing other viewpoints . . . ." First Am. Compl. at 28.

To be sure, as in Alpha Delta, several possibilities might explain the alleged violation of Plaintiff's free-speech rights. It may be that the other students were not permitted to adorn their caps but did so defiantly or were permitted to adorn their caps by accident. But, as in Alpha Delta, the selective enforcement of the District's policy renders it plausible that the rationale for the restriction was the opinion or perspective of the speaker, or the content of her expression. In short, in this case, the same facts that make the selective enforcement not "generally applicable" in the free-exercise context, make the selective enforcement not "content or viewpoint neutral" in the free-speech context. Therefore, at this procedural stage, Plaintiff has plausibly alleged a discrepancy in treatment on the basis of viewpoint.[7]

In short, Plaintiff has carried her burden, at the motion-to-dismiss stage, to

---

[7] We need not and do not engage in a forum analysis because, regardless of the nature of the forum, viewpoint discrimination is "impermissible." Nurre, 580 F.3d at 1095 n.6. Indeed, if we accepted the parties' assertions that the District's graduation is a limited public forum, we still must ask whether the restrictions on student speech are "viewpoint neutral." Alpha Delta, 648 F.3d at 798. Because Waln sufficiently alleged that the District's policy is not viewpoint neutral, her allegations would survive even after a forum analysis.

18

show that the District's selective enforcement of its policy constituted impermissible viewpoint or content discrimination.  See Jacobs, 526 F.3d at 431 n.26; see also id. at 432 n.29 ("[V]iewpoint- and content-based speech restrictions are equally disfavored in First Amendment jurisprudence and, thus, are interchangeable insofar as they are both subject to the same degree of judicial scrutiny.").  Thus, Plaintiff alleged sufficient facts to show a First Amendment violation unless the government can satisfy strict scrutiny.  See Kennedy, 142 S. Ct. at 2426; First Resort, Inc. v. Herrera, 860 F.3d 1263, 1277 (9th Cir. 2017) (recognizing that viewpoint discrimination is subject to strict scrutiny); Hoye v. City of Oakland, 653 F.3d 835, 853 (9th Cir. 2011) (applying strict scrutiny to an ordinance neutral on its face but content-based as applied); see also Boos v. Barry, 485 U.S. 312, 318–319 (1988) (plurality opinion) (applying strict scrutiny where the line between subject matter and viewpoint was not obvious).

We turn next to whether the District has met its burden at the pleading stage.

C.  The District's Burden

"Whether one views the case through the lens of the Free Exercise or Free Speech Clause, at this point the burden shifts to the District."  Kennedy, 142 S. Ct. at 2426.  As noted, the District must satisfy "strict scrutiny," showing that "its restrictions on the plaintiff's protected rights serve a compelling interest and are narrowly tailored to that end."  Id.  Taking the allegations in the complaint as true,

19

as we must, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007), the District cannot meet its burden.

The District offers a single compelling interest: that it must comply with the Establishment Clause.[8] But, as the Supreme Court emphasized in Kennedy, the Establishment Clause does not "compel the government to purge from the public sphere anything an objective observer could reasonably infer endorses or partakes of the religious." 142 S. Ct. at 2427 (internal quotation marks and citation omitted). To the contrary, "learning how to tolerate diverse expressive activities has always been part of learning how to live in a pluralistic society." Id. at 2431 (internal quotation marks and citation omitted). Thus the District has not sufficiently met its burden, at this stage, to show that accommodating religious dress for an individual student would have any effect on other students' rights.[9]

_____

[8] The District does not argue that any of its other asserted interests, such as fostering unity, is "compelling."

[9] Even if the Establishment Clause constituted a compelling interest in this case, the District's policy is not the least restrictive means to further the government's interest. At the time of the graduation, other schools in Arizona allowed students to wear religious items. Indeed, many state laws explicitly permit wearing eagle feathers at graduation. See, e.g., Cal. Educ. Code. § 35183.1; Mont. Code Ann. § 2-1-315; N.D. Cent. Code Ann. § 15.1-19-28; Or. Rev. Stat. Ann. § 329.451(14)(a); S.D. Codified Laws § 13-1-66; Wash. Rev. Code Ann. § 28A.600.500. Arizona joined those states in 2021. Ariz. Rev. Stat. Ann. § 15-348.

CONCLUSION

Plaintiff adequately has alleged that the District violated her First Amendment rights to the free exercise of religion and to the freedom of speech. Whether Plaintiff can prove her claims is not before us. But the district court erred by dismissing the complaint.[10]

**REVERSED AND REMANDED.[11]**

---

[10] As stated in footnote 1, "Plaintiff" in the singular refers to Larissa Waln. We reverse the dismissal only of her § 1983 claims. On appeal, Plaintiff Bryan Waln asserts only that his state-law claims should be revived on remand. Because the district court rested its decision on the dismissal of all federal claims, we also reverse and remand as to Bryan Waln's state-law claims.

[11] Plaintiff's request for judicial notice of several photographs available on the school district's website, is GRANTED. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of [information displayed on school districts' public websites], as it was made publicly available by government entities (the school districts), and neither party disputes the authenticity of web sites or the accuracy of the information displayed therein."); see also Fed. R. Evid. 201.

*Waln v. Dysart School Board*, No. 21-15737



BAKER, Judge, concurring in part and dissenting in part:

Although I concur in the judgment reversing as to Plaintiff Larissa Waln's § 1983 claims for violations of her free exercise and free speech rights, I respectfully dissent from the majority's conclusion that these claims cleared the pleading standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a plaintiff's complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Applied here, this means that Waln must provide "more than a sheer possibility that [the Dysart School District] has acted unlawfully" by "plead[ing] factual content that allows the court to draw the reasonable inference" that the District violated her First Amendment rights. *Iqbal*, 556 U.S. at 678. And while factual allegations contained within a complaint are accepted as true at this stage, this tenet does not apply to legal conclusions. *Id*.

I

A

To begin, I agree with my colleagues that Waln sufficiently alleged that wearing a beaded graduation cap adorned with an eagle feather was a religious practice for First Amendment purposes. To establish a plausible claim under the Free Exercise Clause, a plaintiff must first show that the "government has placed a substantial

burden on the observation of a central religious belief or practice." *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989). We may not, however, assess the centrality of specific religious conduct, as "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith." *Id.*

In response, we have adopted the test that a practice must be " 'sincerely held' and 'rooted in religious belief' " to implicate Free Exercise Clause protection. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see also Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (citing *Malik* for this point). Because Waln sufficiently alleged that beading her graduation cap and adorning it with an eagle feather was rooted in her religion, the First Amendment presumptively protects this practice. The district court therefore erred in holding that Waln needed to allege that the dress-code policy would compel a "violation of conscience" to trigger constitutional protection.

## B

As the majority recognizes, the Free Exercise Clause does not require that a "valid and neutral law of general applicability" must necessarily give way to an individual's sincerely held religious belief or practice. *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990). The District's policy—attached to the complaint as an exhibit—facially qualifies as such a rule, as its language is neutral

2

and generally applicable to all graduates: "Students may NOT decorate their gown or cap."

Waln's complaint alleges "based on information and belief," however, that "other students in the Dysart School District had adorned graduation caps or wore prohibited items on their person during the graduation ceremonies." Waln's complaint also alleges an example: "[A]nother student in the School District was not denied entry [to the graduation ceremony], but rather *permitted* to wear what appears to be a breast cancer awareness sticker" during graduation. (Emphasis added.) Waln alleges that "this student participated with an adorned cap in full view of District and school faculty" and includes a photograph of a young man holding his diploma with one hand, his cell phone with the other, and wearing a cap adorned with a sticker or sign of some kind.

The key issue before us is the sufficiency of these allegations, because as the majority correctly explains, "[i]f the District did not enforce the policy to exclude a student's secular message, then, in the absence of appropriate justification, the District cannot enforce its policy to burden Plaintiff's religious conduct." Majority at 9 (emphasis removed). *See Fulton v. City of Philadelphia, Pa.*, 141 S. Ct. 1868, 1877 (2021) ("[A] law . . . lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.").

3

The majority holds that the two allegations identified above—that (1) "other students were permitted to adorn their graduation caps" and (2) one student "sport[ed] a 'breast cancer awareness' sticker on his graduation cap," Majority at 9—"meet[] [Waln's] burden to show that the District's policy was selectively enforced, and accordingly, not generally applicable," *id.* at 11. Citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), the majority reasons that "[i]t is at least as plausible that the student in question wore the cap decorated with a secular sticker at the graduation ceremony itself" and that the adorned cap in the photograph is alleged to be "simply one example among other secularly decorated caps." Majority at 11.

In my view, neither of the allegations relied on by the majority plausibly allows the inference that the District selectively enforced its policy.

I begin with Waln's allegation that "on information and belief, other students in the Dysart School District had adorned graduation caps or wore prohibited items on their person during the graduation ceremonies." Assuming pleading on information and belief survives *Twombly* and *Iqbal*, such pleading "is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader or 'presumptively' within his knowledge, unless he rebuts that presumption. Thus, matters . . . generally known in the community should not be alleged on information and belief inasmuch as everyone is held to be conversant with them." 5 Charles Alan

4

Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure Civil* § 1224, at 343–44 (4th ed. 2022). As the District's high school commencement ceremonies were all public events, what happened at those ceremonies is presumptively within her knowledge and therefore she must plead *facts* rather than information and belief.

That brings us to the other allegation (and accompanying photograph) that the majority relies on—that another student was permitted to participate in his graduation ceremony even though his cap was adorned with what Waln characterizes as a breast cancer awareness sticker. Recall that the photograph displayed a young man after the graduation ceremony—he is shown holding his diploma with one hand and his phone with the other amid a group of people milling about. In response to the contention that the student might well have affixed the sticker to his cap *after* the ceremony, the majority responds that "[i]t is at least as plausible that the student in question wore the cap decorated with a secular sticker at the graduation ceremony itself." Majority at 11.

But even assuming we can plausibly infer from the photograph that the student wore his adorned cap during the ceremony, that begs the question whether the District affirmatively *permitted* him to do so. If the young man defied the policy and

slipped into the ceremony with his adorned cap undetected,[1] it wouldn't be the first time that a high school student broke the rules.

To have a cognizable claim for relief under the Free Exercise Clause based on selective enforcement,[2] Waln needs to plausibly allege that the District denied her permission to adorn her cap while permitting the young man in question to adorn his cap with his secular sticker. There is, however, an "obvious alternative explanation," *Twombly*, 550 U.S. at 567—the student with the adorned cap depicted in the photograph in Waln's complaint simply evaded the District's policy—even if we accept the inference that he wore the adorned cap during the ceremony. And "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render

---

[1] Or perhaps, in violation of the rules, he affixed the sticker to his cap *after* entering the event but—surrounded by hundreds of other students—only moments before marching into the stadium. There are innumerable ways this young man might have evaded the District's policy.

[2] Like the majority, I do not consider Waln's other theories challenging the neutrality and general applicability of the District's policy.

plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Id*. (citation omitted).

Nothing in Waln's complaint tends to exclude the possibility that the student with the adorned cap—even if he wore the cap at the ceremony—simply broke the rules. Without more, her explanation "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. If anything, Waln's allegation that the District Superintendent was reluctant to "open the door" to any kinds of adornment tends to lean in favor of the alternative explanation that the student in the photograph *violated* the policy rather than received an exemption. For example, an attachment to Waln's complaint states that the District similarly denied a request "that seminary students be allowed to wear a special adornment on their gown during the graduation ceremony."

## II

As pled, Waln's Free Speech claim based on selective enforcement suffers the same fatal defect as her Free Exercise claim. The majority characterizes the District's policy as "viewpoint neutral on its face" but not "applied uniformly." Majority at 17 (quoting *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 803 (9th Cir. 2011)). To show this, however, the complaint would need to plausibly allege that the District permitted other students to adorn their graduation caps. And for the same reasons

7

discussed above, the allegations of the complaint tend to exclude Waln's theory that the District granted such permission.

## III

In my view, the district court correctly determined that Waln's complaint does not adequately allege plausible claims for relief under the Free Exercise or Free Speech Clauses based on selective enforcement. The district court erred, however, in declining to grant her leave to amend to correct these deficiencies because she had not "shown in [her] briefing how [she] could amend [her] claims to remedy the Amended Complaint's legal deficiencies." "[I]n a line of cases stretching back nearly 50 years, we have held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend *even if no request to amend the pleading was made*, unless it determines that the pleading could not possibly be cured by the allegation of other facts.' " *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (emphasis added) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). By definition, a factual deficiency under *Twombly* and *Iqbal* is at least potentially curable.

The district court therefore should have given Waln a chance to remedy her deficient complaint with additional "factual content to nudge [her] claim of [selective enforcement of the policy] across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (cleaned up). I therefore concur in the judgment reversing the district

8

court as to Waln's § 1983 free exercise and free speech claims and remanding for further proceedings.