# IN THE SUPREME COURT OF CALIFORNIA

In re D.P., a Person Coming Under the Juvenile Court Law.

LOS ANGELES COUNTY DEPARTMENT OF
CHILDREN AND FAMILY SERVICES,
Plaintiff and Respondent,

v.

T.P.,
Defendant and Appellant.

S267429

Second Appellate District, Division Five
B301135
Los Angeles County Superior Court
19CCJP00973B

January 19, 2023

Justice Liu authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Kruger, Groban, Jenkins, and Cantil-Sakauye[*] concurred.

---

[*]    Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

In re D.P.

S267429


Opinion of the Court by Liu, J.


In 2019, T.P. (Father) and Y.G. (Mother) brought their infant son, D.P., to the hospital because they were concerned about excessive crying. A chest X-ray revealed that D.P. had a single healing rib fracture that the parents could not explain. In response, the Los Angeles County Department of Children and Family Services (the Department) filed a dependency petition claiming that D.P. and his five-year-old sister, B.P., were at risk of neglect. After reviewing the evidence, the juvenile court dismissed all but one of the counts brought by the Department. The court found that it had jurisdiction over D.P. under Welfare and Institutions Code former section 300, subdivision (b)(1), finding that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child . . . ." (All undesignated statutory references are to the Welfare and Institutions Code; § 300 was amended, effective January 1, 2023, to include changes nonsubstantive to the issues here (Stats. 2022, ch. 832, § 1); unless otherwise indicated, we quote and analyze the 2023 version.)

D.P.'s parents challenged this jurisdictional finding on appeal. While the appeal was pending, the juvenile court terminated its jurisdiction, finding that the parents had complied with their case plan and D.P. was no longer at risk. In response, the Court of Appeal dismissed the parents' case,

1

reasoning that because the juvenile court's jurisdiction had terminated, the case was moot. We granted Father's petition for review.

We conclude that Father's appeal is moot because Father, though asserting that the juvenile court's jurisdictional finding is stigmatizing, has not demonstrated a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings. We further hold that the Court of Appeal has discretion to review Father's case even though it is moot. The Court of Appeal erred in reasoning that "[t]he party seeking such discretionary review . . . must demonstrate the specific legal or practical negative consequences that will result from the jurisdictional findings they seek to reverse." (*In re D.P.* (Feb. 10, 2021, B301135) [nonpub. opn.].) We reverse the Court of Appeal's judgment dismissing the appeal and remand for the court to reconsider Father's argument for discretionary review.

## I.

In 2019, Father and Mother brought two-month-old D.P. to the hospital because he had been crying more than usual and seemed to have difficulty breathing. A chest X-ray revealed that D.P. had pneumonia as well as a single healing rib fracture that the parents, surprised by the latter finding, could not explain. A nurse practitioner who treated D.P. and performed a skeletal survey found no evidence of any other trauma or injuries to his body. The Department received a report alleging that D.P. was a victim of physical abuse and stating that his five-year-old sister B.P. might also be at risk. Following treatment for the rib fracture and for unrelated pneumonia and flu, D.P. was released to his parents. At that time, he was gaining weight and seemed happy.

Father and Mother are immigrants from Vietnam and China, respectively. Their household includes D.P. and B.P., as well as the children's maternal grandparents. The family has no prior child welfare history or criminal history. A social worker who interviewed B.P. found that she appeared healthy and well groomed, and B.P. stated that she felt happy and safe at home. The parents were cooperative with social workers and participated in various pre-disposition services including parenting classes and individual counseling. Nonetheless, because the timing of D.P.'s rib fracture meant that it must have occurred sometime after his birth while he was in the care of his parents, and because his parents could not offer a satisfactory explanation for the injury, the Department filed a petition alleging that D.P. was subject to "deliberate, unreasonable, and neglectful acts" at the hands of his parents, which placed him and his sister "at risk of serious physical harm, damage, danger, and physical abuse." The Department claimed the children were at risk of neglect and sought to have them removed from their parents' care.

In the juvenile court, the Department presented testimony from Dr. Karen Imagawa, an expert in forensics and suspected child abuse. Dr. Imagawa explained that the type of rib fracture D.P. suffered is uncommon in healthy infants and has a "high degree of specificity for non-accidental/inflicted trauma." Because a healthy infant's ribcage is pliable, sustaining this type of injury would require significant compression or blunt force trauma. The parents introduced expert testimony from Dr. Thomas Grogan, a pediatric orthopedic surgeon and expert in child abuse forensics. Dr. Grogan explained that rib fractures like the one D.P. suffered are typically caused by compressive

force. If a fist or object had been used to strike D.P., causing blunt force trauma, Dr. Grogan stated he would have expected to see multiple broken ribs and potentially some external marks or bruising. Because D.P. only had a fracture to one rib, Dr. Grogan believed the injury could be the result of someone, even D.P.'s five-year-old sister, picking him up incorrectly and applying too much pressure to his chest. However, Dr. Grogan could not rule out the possibility that the injury was the result of an intentional act. Both experts agreed that in the absence of any bruising, a caregiver would have no way of knowing that a child had a broken rib.

At the jurisdictional hearing, the juvenile court dismissed the portions of the petition relating to D.P.'s sister because they were not supported by sufficient evidence. With respect to D.P., the juvenile court sustained a modified version of the former section 300, subdivision (b)(1) (section 300(b)(1)) count, which had alleged that "deliberate, unreasonable, and neglectful acts on the part of [D.P.'s] mother and father endanger the child's physical health, safety and well-being, create a detrimental home environment and place the child . . . at risk of serious physical harm, damage, danger and physical abuse."

By its terms, current section 300, subdivision (b)(1)(A) applies where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] . . . the failure or inability of the child's parent or guardian to adequately supervise or protect the child." A related provision, section 355.1, subdivision (a), provides: "Where the court finds, based upon competent professional evidence, that an injury . . . sustained by a minor is of a nature as would ordinarily not be sustained except as the result of the

unreasonable or neglectful acts or omissions of either parent, . . . that finding shall be prima facie evidence that the minor is a person described by subdivision . . . (b) . . . of Section 300."

In light of the expert testimony and the force required to cause D.P.'s injury, the juvenile court concluded the injury was of a sort that would generally not be sustained barring some neglect or harm to the child, and it thus found a prima facie case under section 355.1. This finding " 'shift[ed] to the parents the obligation of raising an issue as to the actual cause of the injury.' " (*In re D.P.* (2014) 225 Cal.App.4th 898, 903, italics omitted; see Evid. Code, § 604.)

The juvenile court explained: "What I have is an unanswered explanation as to how this fracture occur[red] . . . , but I don't lay [it] at the parents' feet because I don't think they affirmatively through a deliberate act or some act on their part or omission on their part caused the injury. And it may, in fact, be that while the child is in the care of the maternal grandmother or some other event occurred that was outside of their view that this compression force was applied." Further, the court said that "I think this is — at its most — a possible neglectful act in the way this compression fracture occurred." But in light of the section 355.1 presumption, the juvenile court sustained the section 300(b)(1) count, though it struck the words "deliberate" and "unreasonable" because those words are "beyond what the evidence shows." With the count so modified, the court found that D.P.'s injury "would ordinarily not occur [except] as the result[] of neglectful acts by the child's mother and father . . . [and s]uch . . . neglectful acts on the part of the child's mother and father endanger the child's physical health, safety and well-being, create a detrimental home environment

and place the child . . . at risk of serious physical harm, damage, danger and physical abuse."

The court ordered D.P. to remain released to the parents under the Department's informal supervision under former section 360, subdivision (b) for a period of six months. The court noted that the parents had already completed family preservation services; they each completed over five months of weekly individual counseling, and according to their therapists, both parents demonstrated a good ability to parent their children. Both parents also attended parenting education programming.

D.P.'s parents promptly appealed the juvenile court's jurisdictional ruling. Mother challenged the basis for the juvenile court's section 300(b)(1) finding, claiming that the elements of failure to protect and causation had not been established. Father argued that the juvenile court had erred in applying the section 355.1 presumption and that no substantial evidence supported the juvenile court's finding that D.P. faced a substantial risk of harm in the future. While the appeal was pending, the parents fully complied with their case plan. The Department did not bring the case back before the juvenile court, and the juvenile court terminated its jurisdiction before the completion of the appeal. In the Court of Appeal, the Department initially took the position that it did not oppose reversal of the jurisdictional finding in light of the parents' successful completion of informal supervision. But after the Court of Appeal asked for supplemental briefing on the issue of mootness, the Department took the view that the appeal is moot and should be dismissed because reversal of the jurisdictional

finding could provide no practical or effective relief to the parents.

The Court of Appeal agreed the case is moot, and it also declined to exercise discretionary review on the ground that the parents "have failed to identify a specific legal or practical negative consequence resulting from the jurisdictional finding." Presiding Justice Rubin dissented, arguing that the jurisdictional finding was not supported by substantial evidence and "creates potentially serious challenges for the parents in their efforts to provide for their family and actively participate in their child's upbringing." We granted review.

## II.

A court is tasked with the duty " 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " (*Consolidated etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 863 (*Consolidated*).) A case becomes moot when events " 'render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief.' " (*Ibid.*) For relief to be "effective," two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks. (See *id.* at p. 865.)

This rule applies in the dependency context. (*In re N.S.* (2016) 245 Cal.App.4th 53, 60 ["the critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error"].) A reviewing court must " 'decide on a case-by-case basis

whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding.' " (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1498.) We review de novo the Court of Appeal's determination that this case is moot. (*Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 319.)

The Courts of Appeal have held that when a juvenile court's finding forms the basis for an order that continues to impact a parent's rights — for instance, by restricting visitation or custody — that jurisdictional finding remains subject to challenge, even if the juvenile court has terminated its jurisdiction. (See, e.g., *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548 [father could challenge jurisdictional finding after jurisdiction terminated because finding was the basis of order restricting his visitation and custody rights]; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431–1432 [father could challenge jurisdictional finding after jurisdiction terminated because finding was the basis of order stripping father of custody and imposing a stay-away order that remained in effect]; *In re A.R.* (2009) 170 Cal.App.4th 733, 740 [termination of jurisdiction did not moot appeal where father's contact with child was "severely restricted as a direct result of the jurisdictional and dispositional findings and orders"].) Because reversal of the jurisdictional finding calls into question the validity of orders based on the finding, review of the jurisdictional finding can grant the parent effective relief.

Where, as here, the juvenile court terminates its jurisdiction without issuing any order that continues to impact the parents, the question of whether an appeal can grant the parents effective relief becomes more difficult. In such cases,

the Courts of Appeal have applied different standards regarding the showing a parent must make in order to maintain a challenge to a juvenile court's jurisdictional finding after jurisdiction has terminated.

Some decisions hold that a parent must identify a "legal []or practical consequence" arising from a dependency court's jurisdictional findings to avoid mootness. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1493; see *In re N.S.*, *supra*, 245 Cal.App.4th at p. 61 [mother's challenge to jurisdictional finding was moot because the finding was not the basis of any adverse orders against her].) By contrast, at least one decision has held that the possibility that a jurisdictional finding will have negative consequences for the parent — for instance, by impacting future dependency proceedings — is enough to avoid mootness. (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 716 [termination of juvenile court's jurisdiction did not moot appeal because the finding that father placed children at risk of physical and emotional harm could have negative consequences for father in future family law or dependency proceedings].)

As noted, a case is not moot where a court can provide the plaintiff with "effect[ive] relief." (*Consolidated*, *supra*, 27 Cal.2d at p. 863.) In this context, relief is effective when it "can have a practical, tangible impact on the parties' conduct or legal status." (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1490.) It follows that, to show a need for effective relief, the plaintiff must first demonstrate that he or she has suffered from a change in legal status. Although a jurisdictional finding that a parent engaged in abuse or neglect of a child is generally stigmatizing, complaining of "stigma" alone is insufficient to sustain an appeal. The stigma must be paired with some effect on the

plaintiff's legal status that is capable of being redressed by a favorable court decision. (Cf. *Humphries v. County of Los Angeles* (9th Cir. 2009) 554 F.3d 1170, 1185, as amended (Jan. 30, 2009), revd. and remanded *sub nom.* on other grounds by *Los Angeles County v. Humphries* (2010) 562 U.S. 29 [for purposes of the due process clause, a protected liberty interest is implicated when the "stigma from governmental action" is coupled with the "alteration or extinguishment of 'a right or status previously recognized by state law' "].) For example, a case is not moot where a jurisdictional finding affects parental custody rights (*In re J.K., supra,* 174 Cal.App.4th at pp. 1431–1432), curtails a parent's contact with his or her child (*In re A.R., supra*, 170 Cal.App.4th at p. 740), or "has resulted in [dispositional] orders which continue to adversely affect" a parent (*In re Joshua C., supra*, 24 Cal.App.4th at p. 1548). We express no view on whether stigma alone may be sufficient to avoid mootness in other contexts, including a criminal appeal, or whether a reviewing court's decision not to reach the merits of the appeal of a jurisdictional finding could ever implicate a parent's due process rights.

We disapprove *In re Daisy H., supra*, 192 Cal.App.4th 713, to the extent it held, contrary to today's opinion, that speculative future harm is sufficient to avoid mootness.

In the Court of Appeal, Father sought not only to have jurisdiction terminated but also to have the juvenile court's jurisdictional finding reversed as unsupported by the evidence. Although jurisdiction has been terminated, Father contends that the appeal is not moot because the jurisdictional finding is stigmatizing and has resulted or will result in his inclusion in California's Child Abuse Central Index (CACI) (Pen. Code,

§ 11170), which carries several legal consequences. As noted, stigma alone is not enough to avoid mootness, so the question is whether Father's concern about inclusion in the CACI amounts to a tangible legal or practical consequence of the jurisdictional finding that would be remedied by a favorable decision on appeal. We conclude it does not and thus his appeal is moot.

Specifically, Father contends that the juvenile court's jurisdictional finding could estop him from challenging his inclusion in the CACI. California's Child Abuse and Neglect Reporting Act (CANRA; Pen. Code, § 11164 et seq.) requires that several state agencies, including the Department, forward substantiated reports of child abuse or neglect to California's Department of Justice (DOJ) for inclusion in the CACI. (*Id.*, § 11169, subd. (a).) CANRA sorts reports of child abuse and neglect into three categories: unfounded, inconclusive, and substantiated. (Pen. Code, § 11165.12.) A report is unfounded when it "is determined by the investigator who conducted the investigation to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse or neglect." (*Id.*, subd. (a).) A report is inconclusive when the investigator determines it was "not . . . unfounded, but the findings are inconclusive and there is insufficient evidence to determine whether child abuse or neglect . . . has occurred." (*Id.*, subd. (c).) A report is substantiated if it "is determined by the investigator who conducted the investigation to constitute child abuse or neglect." (*Id.*, subd. (b).)

When an agency forwards a substantiated report, the agency must provide written notice to the person whose conduct was reported to the CACI. (Pen. Code, § 11169, subd. (c).) Persons listed in the CACI are generally entitled to challenge

the basis for their inclusion at a hearing before the reporting agency. (*Id.*, § 11169, subd. (d).) This is an important protection; according to amicus curiae ACLU of Southern California, roughly 30 percent of CACI reports are removed after a grievance hearing is held. However, if "a court of competent jurisdiction has determined that suspected child abuse or neglect has occurred," the hearing request "shall be denied." (*Id.*, § 11169, subd. (e).)

Inclusion in the CACI carries several consequences for parents. A CACI check is required for "any prospective foster parent, or adoptive parent, or any person 18 years of age or older residing in their household." (Health & Saf. Code, § 1522.1, subd. (b).) California law also requires state agencies to search the CACI before granting a number of rights and benefits, including licensing to care for children in a day care center (*id.*, § 1596.877, subd. (b)) and employment in child care (*id.*, § 1522.1, subd. (a)). Even if an agency or employer is not legally required to check the CACI, it may do so as a matter of internal policy. CACI information is available to a variety of entities, including law enforcement entities investigating a case of known or suspected child abuse (Pen. Code, § 11170, subd. (b)(3)), a court appointed special advocate program conducting a background investigation for employment or volunteer candidates (*id.*, subd. (b)(5)), an investigative agency, probation officer, or court investigator responsible for placing children or assessing the possible placement of children (*id.*, subd. (b)(7)), a government agency conducting a background investigation of an applicant seeking employment as a peace officer (*id.*, subd. (b)(9)), a county child welfare agency or delegated county adoption agency conducting a background

12

investigation of an applicant seeking employment or volunteer status who will have direct contact with children at risk of abuse or neglect (*id.*, subd. (b)(10)), and out-of-state agencies making foster care or adoptive decisions (*id.*, subd. (e)(1)). These agencies and employers are not barred from hiring or granting a license to an applicant listed in the CACI, but they may be hesitant to do so. A CACI search may also occur if there are allegations of child abuse or neglect; the Department's investigation in this case involved making a CACI search for all adults living in D.P.'s household, including parents and grandparents. (See Sen et al., *Inadequate Protection: Examining the Due Process Rights of Individuals in Child Abuse and Neglect Registries* (2020) 77 Wash. & Lee L.Rev. 857, 869.) Moreover, because the information included in the CACI is available to a wide variety of state agencies, employers, and law enforcement, it may be stigmatizing to the person listed.

In this case, however, Father has not shown that the general neglect allegation against him was reported for inclusion in the CACI, nor has he shown that this type of allegation is reportable. These two layers of uncertainty render Father's CACI claim too speculative to survive a mootness challenge.

First, Father does not assert that he has actually been reported for inclusion in the CACI. He notes that the record is silent on this point and argues that where the record is silent, a Court of Appeal will ordinarily presume an official duty has been regularly performed. (See Evid. Code, § 664.) We are unpersuaded that Father has been or will be reported to the CACI. When the Department forwards a substantiated report, it must provide written notice to the person whose conduct was

reported to the CACI. (Pen. Code, § 11169, subd. (c).) Father does not claim he has received any such notice, and the Department has submitted a sworn declaration confirming that the allegation was not reported. Moreover, we note that persons who are concerned they may be listed on the CACI can inquire by sending a notarized and signed letter to the DOJ. (*Id.*, § 11170, subd. (f)(1).) Father has not submitted any documentation from the DOJ establishing that he is listed in the CACI. On these facts, we find that Father has not shown he was reported to the CACI based on his conduct toward D.P.

Father next makes two related arguments that his potential inclusion in CACI is sufficient to avoid mootness. He argues that he will be reported to the CACI in the near future because the juvenile court's findings require the Department to forward the report for inclusion in the CACI. And he asserts that the allegations against him could subsequently be forwarded for inclusion in the CACI, at which point the juvenile court's finding against him would estop him from challenging his inclusion in the CACI. (See Pen. Code, § 11169, subd. (e) [if "a court of competent jurisdiction has determined that suspected child abuse or neglect has occurred," the hearing request "shall be denied"].)

These possibilities are too speculative for purposes of avoiding mootness. The record reveals that in the course of investigating the report against Father, the Department made two allegations. The first is the original report of physical abuse or " 'unlawful corporal punishment or injury' " as defined in Penal Code section 11165.4. The Department deemed this report inconclusive. Because the report was not substantiated, the Department was not required to forward the report to the

14

DOJ for inclusion in the CACI, and there is no indication that the Department ever did or will forward this report. Second, during its investigation, the Department added an allegation of " '[g]eneral neglect' " as defined in Penal Code former section 11165.2, subdivision (b). This allegation was deemed substantiated. However, the Department has submitted a sworn declaration by the investigator of D.P.'s case stating that the allegation was not forwarded to the DOJ pursuant to Department policy.

Further, we note that CANRA distinguishes between cases of "general" and "severe" neglect. " 'Severe neglect' " is defined as "the negligent failure . . . to protect the child from severe malnutrition or medically diagnosed nonorganic failure to thrive," or "willfully caus[ing] or permit[ting] the person or health of the child to be placed in a situation such that their person or health is endangered." (Pen. Code, § 11165.2, subd. (a).) " 'General neglect' means the negligent failure of a person having the care or custody of a child to provide adequate food, clothing, shelter, medical care, or supervision where no physical injury to the child has occurred but the child is at substantial risk of suffering serious physical harm or illness." (*Id.*, subd. (b).) Only reports of "child abuse or severe neglect" — not "general neglect" — must be forwarded to the CACI. (*Id.*, § 11169, subd. (a).) The Department claims it cannot forward the allegation against Father to the DOJ because allegations of general neglect are not eligible for inclusion in the CACI. In response, Father says the allegations against him do not squarely fit within the category of general neglect because general neglect lies only "where no physical injury to the child has occurred" (*id.*, § 11165.2, subd. (b)) and there is no dispute

15

D.P. was physically injured. But the alleged conduct is also a poor fit for "severe neglect." There is no allegation that D.P.'s parents negligently failed to protect him "from severe malnutrition or medically diagnosed nonorganic failure to thrive," or that they "willfully caused or permitted the person or health of the child to be placed in a situation such that their person or health is endangered." (*Id.*, subd. (a).)

Moreover, although "statements by counsel [at oral argument] are not evidence and do not amount to an admission or stipulation of fact" (*Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 796), we note that when asked at oral argument whether the Department intended to report Father for inclusion in the CACI, counsel for the Department said, "We don't want to report these parents. We did not report these parents. And we're not going to unless this court orders us to." The fact that the statute does not require allegations of conduct short of "severe neglect" to be forwarded to the CACI, together with the Department's policy not to forward such allegations and the Department's representations to this court that it will not do so, renders Father's claim too speculative to avoid mootness.

In sum, Father has not shown that he was included in the CACI or that he will be reported in the future based on the allegations at issue here. And even if the Department attempted to report him, Father has not shown that the allegations against him are reportable. In light of these layers of uncertainty, we find Father's CACI claim too speculative to demonstrate a specific legal consequence that a favorable judgment could redress. Since the other legal or practical consequences identified by Father are also too speculative, we

agree with the Court of Appeal that Father's challenge to the juvenile court's jurisdictional finding is moot.

## III.

Even when a case is moot, courts may exercise their "inherent discretion" to reach the merits of the dispute. (*Konig v. Fair Employment & Housing Com.* (2002) 28 Cal.4th 743, 745, fn. 3.) As a rule, courts will generally exercise their discretion to review a moot case when "the case presents an issue of broad public interest that is likely to recur," "when there may be a recurrence of the controversy between the parties," or "when a material question remains for the court's determination." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479–80; see *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1 [exercising discretion to decide an otherwise moot case concerning "important issues that are capable of repetition yet . . . evad[ing] review"].)

In the dependency context, the Courts of Appeal have reached differing conclusions on when discretionary review of moot cases may be warranted outside the circumstances noted above. Some have taken a broad view of their discretion to reach the merits of a moot appeal. (See, e.g., *In re Nathan E.* (2021) 61 Cal.App.5th 114, 121 ["Although mother's argument appears to assume that there will be future dependency proceedings and offers no other specific harm that sustained jurisdictional and dispositional findings may bring her, we nevertheless exercise our discretion to consider her appeal on the merits"]; *In re Madison S.* (2017) 15 Cal.App.5th 308, 329 ["a reviewing court [has] the discretion to consider the adequacy of additional jurisdictional grounds if it so desires"]; *In re Anthony G.* (2011)

194 Cal.App.4th 1060, 1065 ["We are not persuaded that we should refrain from addressing the merits of [parent's] appeal" of a terminated jurisdictional finding]; *In re C.C.* (2009) 172 Cal.App.4th 1481, 1489 [court found parent's claim that a jurisdictional order would create "the possibility of prejudice in subsequent family law proceedings" as "highly speculative," but nonetheless chose to proceed to the merits "in an abundance of caution"].)

Other courts have cited specific factors when considering whether to reach the merits of a moot case. In *In re Drake M.*, the court found discretionary review to be appropriate "when the [jurisdictional] finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction.' " (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763.) However, where a jurisdictional finding "serves as the basis for dispositional orders that are also challenged on appeal" (*id.* at p. 762), the appeal is not moot. We disapprove *In re Drake M., supra*, 211 Cal.App.4th 754 to the extent it suggests that such a finding is insufficient to avoid mootness and supports only discretionary review.

Other courts have declined to exercise their discretion to reach the merits of a moot case where the parent has not identified "specific legal or practical consequence[s] from [the juvenile court's jurisdictional] finding, either within or outside the dependency proceedings." (*In re I.A., supra*, 201 Cal.App.4th at p. 1493; see *In re David B.* (2017) 12 Cal.App.5th 633, 654 ["decid[ing] an otherwise moot appeal . . . is appropriate only if

a ruling on the merits will affect future proceedings between the parties or will have some precedential consequence in future litigation generally"].)

The Court of Appeal here concluded that discretionary review is only appropriate when the parent has "demonstrate[d] specific legal or practical negative consequences that will result from the jurisdictional findings they seek to reverse." This was error. Whether or not a parent has demonstrated a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings is what determines whether the case is moot or not moot. It is not what determines whether a court has discretion to decide the merits of a moot case. To be clear, when a parent has demonstrated a specific legal or practical consequence that will be averted upon reversal, the case is not moot, and merits review is required. When a parent has not made such a showing, the case is moot, but the court has discretion to decide the merits nevertheless.

We note that the availability of such discretion is particularly important in the dependency context, as several features common to dependency proceedings tend to render parents' appeals moot. For example, the principle that "[d]ependency jurisdiction attaches to a child, not to his or her parent" (*In re D.M.*, *supra*, 242 Cal.App.4th at p. 638), means that " '[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate' " (*In re D.P.*, *supra*, 225 Cal.App.4th at p. 902). Thus, where jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot. (See, e.g., *In re D.M.*, at pp. 638–639.) The same is true where there are multiple findings against one parent; the

validity of one finding may render moot the parent's attempt to challenge the others. (See, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875.)

Further, even where all findings against both parents are challenged, the speed with which dependency cases are resolved will often render appeals moot. A key feature of juvenile court is expeditious resolution of pending cases. (See *In re T.G.* (2015) 242 Cal.App.4th 976, 986 [it is the " 'intent of the Legislature . . . that the dependency process proceed with deliberate speed and without undue delay' "].) The juvenile court system is designed to "not disrupt the family unnecessarily or intrude inappropriately into family life . . . ." (§ 300, subd. (j).)

Also, unlike other court proceedings in which "the contested issues normally involve *historical* facts (what precisely occurred, and where and when), . . . in a dependency proceeding the issues normally involve evaluations of the parents' present willingness and ability to provide appropriate care for the child and the existence and suitability of alternative placements." (*In re James F.* (2008) 42 Cal. 4th 901, 915.) The juvenile court's analysis in this regard may consider myriad factors, including a parent's new job, completion of required coursework, changes in housing status, addiction treatment, or even the status of the parents' relationship. To account for these potential developments, juvenile courts conduct " 'recurrent reviews of the status of parent and child.' " (*In re Ryan K.* (2012) 207 Cal.App.4th 591, 597.) Appellate review, by contrast, proceeds more slowly. Whereas juvenile courts must continuously update their information and may alter orders in response to changing facts, an appeal from a juvenile court order

may often take up to 18 months — "a considerable time in the life of a young child." (*In re Tiffany Y.* (1990) 223 Cal.App.3d 298, 304.) In this span, a dependency case may have "moved from possible reunification to possible termination" of parental rights (*ibid.*), and the statutory scheme permits a juvenile court to adjust its determinations while an appeal of a prior order is pending (*In re Ryan K.*, at p. 597; Code Civ. Proc., § 917.7). Appellate dispositions may lose their practical efficacy because "when an appellate court reverses a prior order of the [juvenile] court on a record that may be ancient history to a dependent child, the [juvenile] court must implement the final appellate directive in view of the family's current circumstances and any developments in the dependency proceedings that may have occurred during the pendency of the appeal." (*In re Anna S.*, *supra*, 180 Cal.App.4th at p. 1501.)

In sum, these features of dependency proceedings may make appeals particularly prone to mootness problems. (See *In re Michelle M.* (1992) 8 Cal.App.4th 326, 330 [discussing this problem].) Parents may appeal an order that is later changed, or jurisdiction over the child may terminate before an appeal is finally resolved, as in this case.

Because dismissal of an appeal for mootness operates as an affirmance of the underlying judgment or order (*In re Jasmon O.* (1994) 8 Cal.4th 398, 413), such dismissals may " 'ha[ve] the undesirable result of insulating erroneous or arbitrary rulings from review' " (*In re Marquis H.* (2013) 212 Cal.App.4th 718, 724). This can pose issues not only for the parents subject to such findings, but also for state agencies that rely on such findings in the course of their duties, including child protective agencies, the State Department of Social Services, child support

agencies, and school district officials. (See § 827, subd. (a)(1)(G)–(J) [discussing which agencies can access juvenile court findings].) It is in this context that Courts of Appeal have understandably opted to exercise their inherent discretion to decide certain challenges to juvenile court jurisdictional findings, notwithstanding mootness. In exercising that discretion, courts have properly considered a variety of factors, including but not limited to the ones we now discuss.

Courts may consider whether the challenged jurisdictional finding "could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings," or " 'could have other consequences for [the appellant], beyond jurisdiction.' " (*In re Drake M.*, *supra*, 211 Cal.App.4th at pp. 762–763; see also *In re Nathan E.*, *supra*, 61 Cal.App.5th at p. 121; *In re C.C.*, *supra*, 172 Cal.App.4th at p. 1489.) A prior jurisdictional finding can be considered by the Department in determining whether to file a dependency petition or by a juvenile court in subsequent dependency proceedings. (See, e.g., *In re Jeanette R.* (1989) 212 Cal.App.3d 1338, 1340 [petition alleged parents were unfit in part because mother had a history of neglect as indicated by previous dependency proceedings]; *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 600 [affirming juvenile court's determination that reunification was not in child's best interests, in part because parents had previously had their parental rights as to three siblings terminated due to drug abuse and domestic violence].) Jurisdictional findings may also impact the child's placement (see, e.g., *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1317) or subsequent family law proceedings (see, e.g., *In re*

*Daisy H.*, *supra*, 192 Cal.App.4th at p. 716 [jurisdictional findings "could have severe and unfair consequences . . . in future family law or dependency proceedings"]). In such circumstances, ensuring the validity of findings on appeal may be particularly important.

The exercise of discretionary review may also be informed by whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct. (See, e.g., *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 [electing to conduct merits review because findings that Mother "exposed her children to a substantial risk of physical and sexual abuse are pernicious"]; *In re L.O.* (2021) 67 Cal.App.5th 227, 237 [similar].) Though stigma alone will not sustain an appeal, a court may consider the nature of the allegations against the parent when deciding whether discretionary review is proper. The more egregious the findings against the parent, the greater the parent's interest in challenging such findings.

A court may also consider why the appeal became moot. Where a case is moot because one parent appealed and not the other, but the findings against the parent who has appealed are based on more serious conduct, it may serve the interest of justice to review the parent's appeal. The same may be true where a parent does not challenge all jurisdictional findings, but only one finding involving particularly severe conduct. Moreover, where, as here, the case becomes moot due to prompt compliance by parents with their case plan, discretionary review may be especially appropriate. After all, if D.P.'s parents had not completed their supervision requirements in a timely fashion, the juvenile court's jurisdiction might have continued during the pendency of Father's appeal, and no mootness

concern would have arisen. It would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from jurisdictional findings only for parents who are less compliant or for whom the court has issued additional orders. (See, e.g., *In re Joshua C.*, *supra*, 24 Cal.App.4th at p. 1548; *In re A.R.*, *supra*, 170 Cal.App.4th at p. 740; cf. *People v. DeLong* (2002) 101 Cal.App.4th 482, 492 [declining to hold moot criminal appeal in which defendant promptly complied with drug treatment program and probation conditions in part because doing so would create a discrepancy regarding appeal rights based on compliance].) Principles of fairness may thus favor discretionary review of cases rendered moot by the prompt compliance or otherwise laudable behavior of the parent challenging the jurisdictional finding on appeal.

The factors above are not exhaustive, and no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal. Ultimately, in deciding whether to exercise its discretion, a court should be guided by the overarching goals of the dependency system: "to provide maximum safety and protection for children" with a "focus" on "the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child." (§ 300.2, subd. (a); see *In re Nolan W.* (2009) 45 Cal.4th 1217, 1228 ["The overarching goal of dependency proceedings is to safeguard the welfare of California's children. [Citation.] 'Family preservation . . . is the first priority when child dependency proceedings are commenced.' "].) Given the short timeframes associated with dependency cases and the potentially significant, if sometimes uncertain, consequences that may flow from jurisdictional findings, consideration of the overarching

purposes of the dependency system may counsel in favor of reviewing a parent's appeal despite its mootness. A reviewing court must decide on a case-by-case basis whether it is appropriate to exercise discretionary review to reach the merits of a moot appeal, keeping in mind the broad principles and nonexhaustive factors discussed above.

Here the Court of Appeal concluded, contrary to today's opinion, that it had discretion to consider a moot appeal only if Father presented specific legal or practical negative consequences. We reverse the judgment of dismissal and remand to the Court of Appeal to reconsider Father's argument that discretionary review is warranted in light of the principles and factors discussed above. On remand, the Court of Appeal may allow Father to introduce additional evidence in support of discretionary review if appropriate. (See Code Civ. Proc., § 909 [appellate court may take additional evidence "for the purpose of making factual determinations or for any other purpose in the interests of justice"]; *In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1421 [augmenting record to include additional report from county agency regarding dependency petition because the report related to mootness].)

## CONCLUSION

We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.

**LIU, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**CANTIL-SAKAUYE, J.**[*]

---

\*    Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re D.P.

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 2/10/21 – 2d Dist. Div. 5
**Rehearing Granted**

_____

**Opinion No.** S267429
**Date Filed:** January 19, 2023

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Craig S. Barnes

_____

**Counsel:**

Megan Turkat-Schirn, under appointment by the Supreme Court, for Defendant and Appellant.

Rita Himes for Legal Services for Prisoners with Children, Los Angeles Dependency Lawyers Inc., East Bay Family Defenders and East Bay Community Law Center as Amici Curiae on behalf of Defendant and Appellant.

Aditi Fruitwala, Minouche Kandel; Elizabeth Gill; and David Loy for American Civil Liberties Union of Southern California, American Civil Liberties Union of Northern California and American Civil Liberties Union of San Diego and Imperial Counties as Amici Curiae on behalf of Defendant and Appellant.

Emily Berger; Keiter Appellate Law and Mitchell Keiter for Los Angeles Dependency Lawyers, Law Office of Emily Berger and

Thirteen Appellate Dependency Attorneys as Amici Curiae on behalf of Defendant and Appellant.

Mary C. Wickham and Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

Laura E. Hirahara for California State Association of Counties as Amicus Curiae on behalf of Plaintiff and Respondent.

Lounsbery Law Office and Tate Lounsbery as Amicus Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Megan Turkat-Schirn
Attorney at Law
269 South Beverly Drive, #193
Beverly Hills, CA 90212
(310) 279-0003

William D. Thetford
Principal Deputy County Counsel
500 West Temple Street, Suite 648
Los Angeles, CA 90012
(213) 808-8780